Matter of the Petition of J. ESLER ECKERSON to Have Illegal Taxes Refunded by the Board of Supervisors of Rockland County.

(County Court, Rockland County, December, 1898.)

Taxation — Voluntary payment of taxes incorrectly assessed, when made with knowledge, cannot be recovered — County Law, chapter 686, of 1892.

A nonresident who, with knowledge that his lands were not assessed in the manner and form provided by statute for the assessment of nonresident property, voluntarily pays taxes upon them for six years, expressly consents to the form of the assessment, appears during several years on grievance day and then objects to the amount of his assessments only, cannot subsequently recover his payments, under the provisions of the County Law (Laws of 1892, chap. 686, § 16), upon the ground of an "illegal and improper assessment".

APPLICATION under section 16 of the County Law, chapter 686, Laws of 1892, for an order directing the supervisors of Rockland county to refund to petitioner taxes paid by him for the years 1892, 1893, 1894, 1895, 1896 and 1897.

Ralph E. Prime, for petitioner.

Alonzo Wheeler, for respondents.

TOMPKINS, J. This is an application under section 16 of the County Law, which is chapter 686 of the Laws of 1892, for an order directing the supervisors of the county of Rockland to refund

County Court, Rockland County, December, 1898.    [Vol. 25.

to the petitioner taxes paid by him to the collector of the town of Haverstraw for the years 1892, 1893, 1894, 1895, 1896 and 1897.

The petitioner is the owner in fee and as trustee of the premises situate in the town of Haverstraw, in said county, upon which the taxes were paid, and which, it is claimed by the petitioner, were " illegally and improperly assessed." From October, 1892, to the present time the petitioner, who resided in New York city, was the owner of the premises in question, consisting of several brick yards occupied by tenants. The property was formerly, and down to October, 1892, owned by James Eckerson, the petitioner, and others.

The six several tracts of land, constituting the premises in question, were respectively assessed in 1892, as follows: " Eckerson, James, and others; " " Eckerson, James; " " Eckerson, James, and others; " " Eckerson, James, and others; " " Eckerson, James, and others; " " Eckerson, James, and others; " and so continued to be assessed until 1895, when the name of the owner appears as follows: " James Eckerson and others, heirs of," and so continued to and including the year 1897.

The property all this time was owned by the petitioner and he paid the taxes, which he now seeks to have refunded. The assessment was clearly incorrectly and irregularly made. It should have been assessed in the manner provided by the statute for the assessment of nonresident property. James Eckerson was dead, and the words " and others " and " heirs of " mean nothing.

The petitioner contends that the irregularity in the manner of the assessment renders it " illegal and improper " within the meaning of the statute. Under the proof and circumstances in this case, I think not. The provision of the statute under which this proceeding is taken seems to me to be intended to provide for the refunding of an unjust tax, or unjust excess of taxation, or taxes assessed against property exempt from taxation, or taxes which could not or should not be collected in any manner of the person who makes the payment.

In the Matter of New York Catholic Protectory, 77 N. Y. 342, it was held that an assessment against property which was exempt from taxation was an " illegal and improper assessment."

In the case of Harris v. Supervisor of Niagara, 16 Abb. N. C. 282, Judge Bradley, writing the opinion of the court, says: " The statute of 1871,— providing for the refunding by order of the county court, was evidently designed to relieve, by reimbursement,

persons from taxes which were not legally chargeable to them or on their property,— taxes which they should not be required in any manner to pay.   *   *   *   The terms ' illegal or improper assessment ' or ' levy of tax ' in that act, fairly interpreted, had reference to the tax itself, rather than to the method of making the assessment or levy; — to an illegal tax rather than to the erroneous assessment or levy of a legal one."

The words " illegal and improper assessment " are used in the same sense in the act of 1871, as in the act of 1892, under which this proceeding was taken.   In this case the land was subject to taxation.   The petitioner and the one who paid the taxes was the actual owner.   He paid no more than he would have paid if the assessment had been regular.   He was not coerced or forced to pay by reason of the irregularity, because the very irregularity of which he now complains would have enabled him to have successfully resisted any attempt to collect the taxes out of his personal property.

The statute provides for this special proceeding to recover taxes " illegally and improperly assessed " and it was held in the Adams case, 154 N. Y. 619, that in such a proceeding proof of a voluntary payment is no defense.   Such being the law, it must follow that the purpose of the statute was to furnish a remedy for persons who were in no event liable for the tax which they seek to have refunded. In the Adams case which is cited by petitioner's counsel, the executor who paid the taxes and who instituted the proceedings to have it refunded was not the owner of the real estate assessed and could not be made to pay taxes thereon.

In that case the court says:   " The benefits of the statute are not confined to parties who have paid an illegal tax upon compulsion, but extend to all persons who have paid taxes that they were not legally bound to pay."

Further, it appears, that the petitioner appeared before the assessors on grievance day several times during the years in question, and examined the assessment-roll and made and filed written objections to the assessments; all of which objections were confined to the amounts of the several assessments and an alleged inequality thereof.

He testified that on grievance day in 1897 he personally appeared before the assessors and filed a protest against the assessments based upon their inequality.   The written protest contained several extracts from the assessment-roll and is indicative of a careful examination of the roll which would have disclosed the manner of the

County Court, Rockland County, December, 1898.     [Vol. 25.

assessment. It is satisfactorily proved that in every year from 1892 to 1897, inclusive, the petitioner, or some one in his behalf, appeared before the board of assessors on grievance day and objected to the assessment, always limiting the objections to the amounts and the inequality thereof.

In some of the years, if not all, it was shown that either the petitioner or his representative examined the assessment-roll before grievance day for the purpose of obtaining the amount of the assessment and making comparisons to enable suitable objections to be prepared for grievance day.

Thomas Foley, the town clerk of the town of Haverstraw, testified that in the years 1896 and 1897, while he was the custodian of the assessment-rolls, for fifteen days after their completion, the petitioner several times examined the rolls in his office and made extracts therefrom.

I must find from the testimony of the present and the former assessors and the town clerk, and the petitioner himself, that during all of these years the petitioner knew the manner of the assessment of his property and that every year he appeared on grievance day complaining of the inequality of his assessment only. Frequent conferences were had between the petitioner and the assessors, resulting, in some instances, at least, in the reduction of some of the assessments. There is no pretense that the tax was not voluntarily paid.

It further appears that William Bacon, one of the assessors of the town, had a conversation with the petitioner prior to grievance day in 1894, in which he asked the petitioner, " if he wanted the assessment to remain on the books as it was, or if he wanted it changed — the mode of the assessment changed — and he said ' no.' " Further, Bacon asked him " whether he wanted it assessed to the tenants or not," and the petitioner replied, " no, that it was satisfactory as it was."

Again, the witness testifies, as follows: " The question I asked Mr. Eckerson was simply this: If he wanted the mode of his assessment or the manner of his assessment changed; he said ' no,' and I says would you rather have it assessed to the tenants or remain assessed as it is, and he said ' no; ' he was satisfied with the manner of the assessment or mode of assessment as it stood at the present time."

The same witness testified that a similar conversation took place on several different occasions. In June of the present year he had

another conversation with the petitioner in which he asked him " whether he wanted the assessment of his property changed to the tenants or not," and the petitioner, after saying, " you asked me that once before," replied in substance that he wanted no change made.

This testimony of Bacon is substantially admitted by the petitioner, for he testified that Mr. Bacon had spoken to him on the subject. His testimony in that respect is as follows:

" Q. What did he say? A. Said he, Mr. Eckerson, shall we assess — it is words to this effect, I am not giving you word for word,— would you like to have us change our plan of assessing you, or leave it as it is; I said, I have no plan about it.

" Q. What plan did he disclose to you? A. Whether to assess it to your tenants or yourself — that is my rememberance of it."

The foregoing conversations with the petitioner disclose the fact that he knew how his property was assessed, and that knowing it, he made no objection thereto on grievance day, or at any other time, but, on the contrary, acquiesced in the manner and mode of the assessment, and consented that it should be assessed in that manner, and, with full knowledge of the facts, voluntarily paid the taxes.

The assessment of the property to the tenants as occupants, as suggested by the assessor, would have been a regular and proper assessment.

My conclusions are, that the taxes were voluntarily paid; that the manner and method of the assessment was known to the petitioner, the owner of the premises, and acquiesced in by him; that he expressly consented that the property should be so assessed; that he appeared before the assessors on grievance day in each year, either in person or by a representative, and by objecting to the amount of the assessment only, and with full knowledge of the manner and method of the assessment, he waived that irregularity.

The legislature never intended that the owner of property who, in the ordinary and usual operation of the Tax Law, would be obliged to pay taxes thereon, can have the same refunded by this proceeding, regardless of whether he knew the manner in which the assessment was made and consented thereto, and waived the irregularity, or not, and whether or not payment was voluntary, with full knowledge at the time of the facts.

Application is denied.